[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10433

Non-Argument Calendar

_____

DEBORAH SHOENBERG RUBIN,

Plaintiff-Appellant,

*versus*

LIFE INSURANCE COMPANY OF NORTH AMERICA,
NATIONAL FEDERATION OF INDEPENDENT BUSINESS,

Defendants-Appellees,

JOSEPH KENNEY, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:22-cv-81246-BER

_____

Before NEWSOM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Deborah Rubin sued her former employer and her insurance provider pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B) ("ERISA"), for denying her short-term disability claim after she was diagnosed with anxiety and depression. She alleges that the medical evidence submitted by her treating physician and reviewed by the insurance company demonstrates that she was unable to perform the essential functions of her job, entitling her to disability. The court below denied her claim because it found that, under the deferential standard of review required under ERISA, the insurer did not unreasonably construe the submitted medical evidence. After careful review, we affirm.

## I.    Statement of Facts

The Plaintiff-Appellant, Deborah Rubin, worked as a telephone sales representative for the National Federation of Independent Businesses ("NFIB") until June 7, 2021, after which time she alleges she could no longer work due to depression and anxiety. While employed at NFIB, Rubin was insured under a

24-10433                Opinion of the Court                3

short-term disability ("STD") policy through Life Insurance Company of North America ("LINA"). The STD policy (the "Plan") is part of a welfare benefits plan governed by ERISA.[1]

The Plan defines a person as disabled if that person is (1) "unable to perform the material duties of your Regular Job"; and (2) "unable to earn 80% or more of your Covered Earnings from working in your Regular Job." The Plan also vests LINA with the authority and discretion to make benefit determinations.[2]

Rubin submitted a claim for STD benefits under the Plan on September 29, 2021. LINA requested records from Rubin's treating physician, Dr. Richard Phelps, on October 1, 2021. LINA simultaneously informed Rubin that it was requesting the records to determine whether she was disabled under the policy. Specifically, LINA requested a Behavioral Health Questionnaire, a document that LINA provided for describing Rubin's mental

---

[1] ERISA "allows an insurance-plan participant to bring a civil action to recover benefits due to [her] under the terms of [her] plan." *Stewart v. Hartford Life & Accident Ins. Co.*, 43 F.4th 1251, 1254 (11th Cir. 2022) (quotation omitted).

[2] The Plan states

> The Plan Administrator has appointed [LINA] as the named fiduciary for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims. [LINA] shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan and to make any related findings of fact. All decisions made by [LINA] shall be final and binding on the Participants and Beneficiary to the full extent permitted by law.

condition, and a copy of Rubin's relevant health records.[3]  But for reasons not clear in the record, LINA's requests went unanswered for several months.[4]

Dr. Phelps eventually returned a completed Questionnaire to LINA on November 26, 2021, which listed medications Dr. Phelps was currently prescribing to Rubin for her previously diagnosed major depressive disorder and general anxiety/stress. Relevantly, however, in the Questionnaire, Dr. Phelps described Rubin's "[s]ocial function" as "improved" and attributed Rubin's inability to work to her need to "tak[e] care of [her] husband who cannot work."   Ultimately, Dr. Phelps concluded in the Questionnaire that Rubin was functionally incapable even though

---

[3] LINA also requested:

- Complete copies of office visit notes from June 16, 2021, to present;

- Hospital Intake/Discharge summary, and/or Operative Report(s);

- Test results/findings (for example: MRI's, EKG's, x-ray's, etc.);

- Treatment plan (including meds, frequency of treatment, referrals, Physical Therapy, etc.);

- Restrictions and limitations that prevent(ed) patient from returning to work;

- Estimated return to work date/date patient was released to return to work.

[4] Rubin contends that LINA sent Dr. Phelps a record request that included her pre-marriage name, Shoenberg, which led to the confusion.  As noted by LINA, however, all subsequent requests included Rubin's married name.

he did not explain how her depression or anxiety made her unable to perform her job outside of her need to care for her husband. Finally, though LINA had requested copies of Rubin's prior medical records, none were included.

Accordingly, LINA denied Rubin's STD claim on December 7, 2021. In its denial notice, LINA informed Rubin that a review of the information provided by her treating physician did not demonstrate psychiatric impairment because she had "essentially normal mental status exam findings;" no indication of an inability "to function on a day to day basis;" and no indication of a work restriction. Lastly, LINA noted that Rubin's caretaking role "indicates a functional capacity."

Rubin appealed the denial. During the appeal period, Dr. Phelps sent LINA the requested office notes from June 2019 to January 3, 2022, included in Rubin's medical file.[5] The records contained multiple "mental status exams" that demonstrated that Rubin had "appropriate mood and affect, no psychotic symptoms, no SI/HI [suicidal ideation/homicidal ideation], normal recent and remote memory, normal attention and concentration" and that subsequent exams noted relatively unchanged condition. Rubin was also going to the gym a few times a week and adequately performing all the necessary caregiving tasks for her cognitively

---

[5] The office notes included the content of Dr. Phelps's discussions with Rubin and were dated July 12, 2021; July 13, 2021; August 26, 2021; October 8, 2021; October 15, 2021; November 26, 2021; and December 14, 2021. There were no office notes preceding Rubin's cessation of work on June 7, 2021.

impaired husband—cooking, cleaning, and driving him to all his appointments.  During this same time period, Rubin also appears to have overseen the renovation of her condo.  Notably, Rubin's file contained no visitation notes or other medical documentation in May or June 2021, which immediately preceded her June 7, 2021, departure date from work.[6]  Further, the notes from her July 13th appointment indicated that Dr. Phelps completed Rubin's FMLA paperwork "for her caretaker role for her husband."

On February 10, 2022, LINA informed Rubin that it would uphold the denial of her claim based on Dr. Phelps's notes and a LINA employee's review of her medical records.  Because LINA based its decision in part on its own employee's review, however, LINA invited Rubin to respond.  Rubin categorically disputed LINA's review and appeal decision.

Rubin's response to the LINA denial, in which she disagreed with the appeal decision and its process, led to an additional layer of review.  LINA employed its Medical Director, Dr. Bahar Golestan, "Board-Certified in Psychiatry," to review Rubin's file. Dr. Golestan's review included a peer-to-peer telephone conference with Dr. Phelps.  Dr. Phelps confirmed to Dr. Golestan that Rubin was capable of serving as the caretaker for her husband,

---

[6] Rubin's records also included information about serious mental illness, including "irritability, fatigue/lethargy; anhedonia, decreased appetite, poor focus/concentration, isolation, guilt, hopelessness and crying spells," but these symptoms are described in a treatment note from May 2020. Thus, these notes predate Rubin's STD claim by over a year.

that his MSE (mental status exam) findings were inconsistent with a functional psychiatric impairment, and that he did not go through his MSE "with a fine tooth comb." Dr. Phelps also confirmed that Rubin had "no deficits in cognition or communication" and simply noted the stress that Rubin experienced in her job because it "can be stressful talking with others and sometimes asking for money and having a boss to report to."

Dr. Golestan also reviewed Rubin's medical records. Dr. Golestan criticized Dr. Phelps's conclusion that Rubin was medically disabled from performing her job duties because Dr. Phelps's opinion was "not well supported by medically acceptable clinical diagnostic techniques"; Rubin's symptoms are normal indicators of stress and "do not manifest into requiring medically necessary activity restrictions"; Dr. Phelps was unable to provide "examples of activities [Rubin] is actually unable to perform"; and Rubin's other activities, which included overseeing the condo renovation and going to the gym, demonstrated her functionality. Dr. Golestan ultimately concluded that Rubin's records did not demonstrate "psychiatric conditions" that were "impairing or causing a functional loss" leading to "medically necessary activity restrictions."

Thus, LINA again denied Rubin's STD claim on March 2, 2022. LINA explained Dr. Golestan's findings and how they buttressed the original decision to deny Rubin's claim. Once again,

LINA invited Rubin to respond to its denial because of Dr. Golestan's new opinion on her medical records.[7]

Following several additional communications from Rubin's counsel, a final review of Rubin's medical file was performed by another medical specialist, Dr. Divya Hedgren, MD, "Board-Certified in Adult and Geriatric Psychiatry." Dr. Hedgren also concluded that Rubin was "not functionally limited" by her anxiety and depression. Accordingly, LINA denied Rubin's STD claim. Though LINA invited Rubin to address Dr. Hedgren's opinion, LINA ultimately denied Rubin's appeal a final time.[8]

Rubin filed this action against LINA, LINA employees, NFIB, and an NFIB employee on August 10, 2022.[9] The magistrate judge dismissed all claims against the LINA-employee defendants because ERISA preempts such claims.[10] On February 16, 2023, the magistrate judge also denied Rubin's motion for discovery outside the Administrative Record and Plan documents because Rubin had not demonstrated that additional discovery was required.[11] NFIB was dismissed from the case at summary judgment because the

---

[7] LINA provided Rubin with an amended report by Dr. Golestan because the initial report referenced a different patient's name.

[8] The Record is unclear about whether Rubin responded a final time, but Rubin's counsel had notified LINA prior to the final denial that an additional denial would result in a lawsuit.

[9] The complaint was amended three times.

[10] The parties consented to proceed before a magistrate judge.

[11] This motion was denied without prejudice.

undisputed facts showed that NFIB played no role in the administration of the Plan and, therefore, did not influence the denial decision.

LINA filed for summary judgment on November 9, 2023, and the magistrate judge granted the motion on January 9, 2024 because Rubin had not shown that LINA's decision was arbitrary and capricious. Though the magistrate judge found that LINA had conceded a structural conflict of interest because it both administers and pays out claims under the Plan, the magistrate judge also found that Rubin had failed to show that there was no reasonable basis for LINA's denial of her claim. Rubin timely appealed.

## II.    Standard of Review

"We review *de novo* a district court's ruling affirming or reversing a plan administrator's ERISA benefits decision, applying the same legal standards that governed the district court's decision." *Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan*, 833 F.3d 1299, 1306 (11th Cir. 2016) (internal quotation marks omitted).

## III.    Discussion

Rubin raises two issues on appeal: (1) that the magistrate judge improperly granted LINA summary judgment because it did not properly apply our framework for evaluating ERISA claims, and (2) that the magistrate judge improperly denied Rubin's request for additional discovery. Rubin is wrong on both points.

A. *The magistrate judge correctly granted summary judgment to LINA because LINA's decision was not arbitrary or capricious*

To decide whether the magistrate judge erred in granting summary judgment to LINA, we apply federal common law for evaluating denial-of-benefits decisions under ERISA. ERISA itself offers no guidance on the appropriate level of deference to give denial-of-benefits decisions reviewed under § 1132(a)(1)(B), *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989), nor does it guide courts in interpreting the terms of employee benefits plans. *Alexandra H.*, 833 F.3d at 1306. Accordingly, federal courts have developed a body of federal common law to govern the review, interpretation, and enforcement of ERISA benefits plans. *Id.*; *see also Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1041 (11th Cir. 1998) ("Courts have the authority to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself." (quotation omitted)).

The framework we have adopted for evaluating decisions under ERISA has six steps:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested

24-10433                Opinion of the Court                11

with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.[12]

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354–55 (11th Cir. 2011).

---

[12] Arbitrary and capricious review in the ERISA context, "sometimes used interchangeably with an abuse of discretion standard," requires us "to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Jett v. Blue Cross & Blue Shield, Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989).

We are not bound to strictly follow this ordering, and may skip the first step where, as here, we conclude that LINA was "vested with discretion in reviewing claims." *Id.* at 1355, 1356–57 (skipping step one and determining reasonableness of plan administrator's discretionary denial of benefits).[13] Rubin's insurance policy unambiguously stated that LINA "shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan and to make any related findings of fact." *See Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 912 (11th Cir. 1997) (stating that the discretionary language triggering arbitrary and capricious review must be "express language unambiguous in its design" (internal quotation marks omitted)). Because we determine at step two that LINA was vested with discretion in reviewing claims, we move on to step three—whether LINA's denial of Rubin's STD claim was supported by reasonable grounds. *Blankenship*, 644 F.3d at 1355.

To determine whether there were reasonable grounds for the denial, we may consider only "the material available to the administrator at the time it made its decision." *Id.* at 1354. If LINA's decision was at least a reasonable interpretation of the evidence in the administrative record, it was not arbitrary or capricious, even if the evidence could support a contrary decision. *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th

---

[13] The district court likewise skipped this step because it also found that LINA was vested with authority under the Plan.

Cir. 1989).   Whether the insurer's decision was reasonable is a question of law.  *Blankenship*, 644 F.3d at 1354.

If reasonable grounds supported LINA's denial of Rubin's STD claim, we must subsequently decide whether LINA operated under a conflict of interest in denying the claim and, if so, how that conflict may affect our conclusion that the denial was not arbitrary and capricious.  *Id.* at 1355.

1. *LINA's decision was a reasonable interpretation of the evidence in the administrative record*

Both the Plan and our precedent task Rubin with submitting proof sufficient to show entitlement to benefits.   *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1247 (11th Cir. 2008). Rubin argues that her medical records provide uncontroverted proof that she was medically disabled from her job.   Based on Rubin's medical evidence, however, LINA could have reasonably concluded that Rubin was not disabled.

In order to receive disability benefits under the Plan, a claimant must meet all "the terms and conditions of the Policy." Included in those terms and conditions is a requirement that the claimant be disabled under the Plan.  To be disabled, Rubin must show that, solely because of injury or sickness, she was (1) unable to perform the material duties of her Regular Job, and (2) unable to earn 80% or more of her Covered Earnings from working in her Regular Job.

Rubin stopped working on June 7, 2021, claiming that she was disabled due to depression and anxiety.  The earliest treatment

note relative to Rubin's disability onset, however, was from July 12, 2021.[14] Indeed, when LINA made its initial determination, the only medical record in its possession was the Questionnaire provided by Dr. Phelps, which revealed no impairments that would preclude working, and rather stated that Rubin was performing all the caregiver tasks for her disabled husband. Further, the records provided by Dr. Phelps during the appeal review of Rubin's claim also demonstrated that Rubin had filed FMLA paperwork in July 2021 related to "her caretaker role for her husband."

The reasonableness of LINA's determination is confirmed by the review LINA performed of the records that it initially received and those that were provided on administrative appeal. First, a LINA employee reviewed Rubin's records and provided a reasoned justification for upholding the denial of her claim. Second, Dr. Golestan denied the appeal after she both (1) engaged in a peer-to-peer discussion with Dr. Phelps about Rubin's purported disability and (2) personally reviewed Rubin's provided medical records. Finally, Dr. Hedgren also reviewed Rubin's file and upheld the denial of her claim.

Each of these layers of review shows a reasonable effort by LINA to make a good-faith determination based on the evidence

---

[14] LINA argues that this shows that Rubin failed to satisfy the Elimination Period, which required that her disability caused by sickness be within 14 days of her inability to work. But because we decide for LINA on other grounds, we need not address this argument.

before it.  Further, we have held that claim administrators may reasonably credit the opinions of the reviewing specialists. *See, e.g.*, *Blankenship*, 644 F.3d at 1356.  Here, the reviewing specialists each provided a written explanation for why they believed that Dr. Phelps's treatment records did not support Rubin's STD claim.

Dr. Golestan's review itself provides an analysis that explains why LINA had a reasoned justification for the denial of Rubin's STD claim.  Dr. Golestan's detailed report of her discussion with Dr. Phelps noted that Rubin could serve as a caretaker for her husband, that her mental status exams were inconsistent with functional disability, and that Dr. Phelps was unable to provide concrete examples of work duties that Rubin's mental state prevented her from performing.  Further, Dr. Golestan explained that Dr. Phelps's opinion was not well supported by medically acceptable clinical diagnostic techniques including mental status examinations or psychological or neuropsychological testing. Thus, Dr. Golestan's review provides a reasoned justification for the denial of Rubin's STD claim.

2. *LINA's structural conflict of interest does not render its decision arbitrary and capricious*

Finally, Rubin argues that the structural conflict of interest present in this case, which LINA conceded, allowed for an "illegal collusion" between NFIB and LINA in denying Rubin's claim such that LINA's decision should be found arbitrary and capricious at

step six of our review.  We held in *Blankenship*, however, that "[t]he burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest."  644 F.3d at 1357.  We also have noted that the presence of a conflict of interest is at most "a factor" in our review of the administrator's decision and must be of "inherent or case-specific importance" for us to find an arbitrary and capricious denial.  *Id.*

Rubin failed to provide evidence either below or on her many administrative appeals that LINA's decision was influenced by its own financial interests and accordingly has failed to prove that LINA's decision should be found arbitrary and capricious at step six of our review.  To support her argument, she cites several nonbinding cases in which we or our sister circuits have held that a structural conflict of interest led to an arbitrary and capricious decision, but she does not explain how they prove that LINA's position as both insuring and administering her STD policy led to an unreasonable decision in this case, considering the submitted medical evidence.  Neither of our cases that she cites, both of which are unpublished and nonbinding, support her position.  In *Mickell v. Bell / Pete Rozelle NFL Players Retirement Plan*, 832 F. App'x 586, 593 (11th Cir. 2020), we found that a decision was arbitrary and capricious because a conflicted administrator refused to consider relevant evidence submitted by the plaintiff. Here, however, LINA reviewed all medical evidence submitted by Rubin and her treating physician multiple times.  And in *Bradshaw v. Reliance Standard Life Insurance Co.*, 707 F. App'x 599, 607 (11th Cir. 2017), we determined

24-10433                Opinion of the Court                17

that a denial of disability benefits by a conflicted administrator was unreasonable because the administrator misconstrued a healthy pregnancy as a pre-existing condition to the plaintiff's post-pregnancy stroke-induced disability.  Here, Rubin fails to identify a similarly unreasonably interpretation of her medical records.[15]

The submitted medical evidence reasonably supports LINA's ultimate determination.  Accordingly, LINA's decision to deny Rubin's STD claim based upon the submitted medical

---

[15] Rubin also cites two out-of-circuit cases, which do not bind us either, but neither avails her.  In *Steele v. Boeing Co.*, 225 F. App'x 71, 75 (5th Cir. 2007), our sister circuit found that a denial of STD benefits was unreasonable because the administrator based the denial on the fact that the employee's treating physicians had differing opinions on the cause of the plaintiff's disability.  This conclusion was unreasonable because the doctors ultimately agreed that the plaintiff was disabled, even if they disputed the cause of the disability, and the administrator could not identify reliable evidence undermining the diagnosis of disability.  *Id.*  Here, by contrast, LINA has identified reliable evidence undermining the opinion of Rubin's single treating physician, and LINA has not based its denial on conflicting opinions as to the cause of an agreed-upon disability.  In *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 797 (3d Cir. 2010), our sister circuit found that an insurer's denial of displacement benefits was unreasonable because the plaintiff, whose employer was being purchased in a deal that was to guarantee the plaintiff either continued employment or displacement benefits, was offered a sham position and terminated immediately after the sale.  Importantly, the court's conclusion relied upon information outside the administrative record because the plaintiff had provided proof that the program administrator had allowed a conflict of interest to influence the benefits denial.  *Id.* at 793–94.  Rubin cites this case to argue that she should be allowed to discover evidence outside the administrative record, but we have our own means of evaluating whether to review evidence outside of the administrative record as we will address below.

evidence was reasonable.  Further, Rubin has failed to demonstrate that the structural conflict of interest renders LINA's otherwise reasonable decision arbitrary and capricious.  Thus, we affirm the grant of summary judgment to LINA.

B. *The magistrate judge correctly denied Rubin's request for discovery outside the administrative record*

Lastly, Rubin argues that the magistrate judge improperly denied her request for additional discovery outside the administrative record because LINA acted under a conflict of interest.

"When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard" we limit review to the administrative record because our function is to determine "whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Harris v. Lincoln Nat'l Life Ins. Co.*, 42 F.4th 1292, 1296 (11th Cir. 2022) (quotation omitted).  Accordingly, we have held previously that in a case governed by arbitrary and capricious review, a plaintiff who wants to introduce information outside the administrative record should request that the lower court remand the claim to the administrator for consideration of all purportedly relevant evidence.  *See id.*  We have already determined that arbitrary and capricious review applies to Rubin's claims, and she has not requested a remand to the administrator from either us or the court below.  We may not, therefore, consider evidence outside the administrative record.  Further, Rubin concedes that the

magistrate judge properly "limited the record to the administrative record" in light of *Harris* and the standard of review. Rubin's concession dooms any argument to the contrary. Thus, we affirm the magistrate judge's denial of Rubin's request to seek discovery outside the administrative record.

## IV. Conclusion

Accordingly, we hold that the district court properly granted summary judgment to LINA because LINA was vested with discretion to administer the Plan, and LINA reasonably interpreted the submitted medical evidence.

**AFFIRMED.**