OPINION OF THE COURT
Stephen D. Aronson, J.
In a case of first impression, this court holds that a helicopter air ambulance service may be barred from recovering the cost of its services if the services were not medically necessary.
The Pleadings
Mercy Flight Central, Inc. filed a complaint in October 2010 against James Kondolf. Plaintiff contends, in words or sub *485 stance, that defendant owes plaintiff $7,935 for services it provided to defendant on October 15, 2009, when it transported him from Victor, New York to Strong Memorial Hospital in Rochester, New York by helicopter. Defendant filed an answer in December 2010. Plaintiff filed an amended summons and complaint that month, with identical content to the original but printed in a larger font size, in response to defendant’s answer. An answer to the amended summons and complaint was filed in January 2011. Defendant contends, in words or substance, that he does not owe the bill to plaintiff for the helicopter lift because he was unconscious at the time of the transport and therefore did not give his consent for it and was not capable of entering into a contract for the ambulance services rendered by plaintiff. He also contends that he should not be held accountable for the cost of the services because they were not medically necessary. Defendant’s insurer, Excellus Blue Cross and Blue Shield (BCBS), denied coverage on that basis. Defendant filed an internal appeal with BCBS and received a final adverse determination in January 2010. After defendant lost the internal appeal, an external appeal review agent also determined that the services were not medically necessary. In December 2011 defendant filed a third-party summons and complaint against BCBS. The complaint was dismissed in September 2012 on the ground that defendant had commenced his suit beyond the two-year limit provided in the BCBS contract. After months of conducting discovery, plaintiff and defendant filed motions for summary judgment in February and March 2013, respectively. Oral argument took place on May 23, 2013.
Motions
1. Plaintiffs Motion for Summary Judgment
Plaintiff’s motion asserts that there is no material fact in dispute that would be sufficient to form a viable defense to its cause of action against defendant, and it seeks judgment against defendant for $7,935 plus interest. Its motion is supported by (1) an affirmation of Attorney James F. Evans, III; (2) an affidavit by its business development director, Gary H. Morgan; (3) an affidavit by K. W Kelly, general manager and chief operating officer of Finger Lakes Ambulance; and (4) an affidavit by Patrick Long, captain of the East Bloomfield-Holcomb Fire Department Emergency Squad.
Evans’s affirmation refers to the urgency of the medical situation on the date of the transport, as spelled out in the affidavits *486 of Morgan and Kelly, and asserts that although defendant was conscious at the time of the transport, he would be liable for the cost of the services even if he had been unconscious. Evans cites 22A NY Jur 2d, Contracts § 633, which states that a provider of services has the right to restitution when the services are necessary to prevent serious bodily harm to the person receiving them and are offered (1) with the intent to charge money for them, (2) without reason to know the recipient of the services would not consent, and (3) in a situation in which it was impossible to obtain consent or the consent would have been immaterial (in case of youth or mental impairment of the recipient).
Morgan’s affidavit explains that plaintiff keeps a patient record for each call it makes and that this record is made up of information gathered from first responders and the examination and treatment provided to the customer upon arrival at the scene by plaintiff’s employees. The affidavit and defendant’s patient record, attached to the motion as exhibit E, both indicate that the air ambulance was needed due to the possibility that defendant would need critical care life support during the transport that is not available from the local ground ambulance. The patient record also states that the air transport was needed in order to avoid ground transport delays in getting defendant to a level one trauma center. The patient record states that defendant had fallen down a flight of stairs and was found by his wife with “sonorous respirations” (snoring) and that he had a head laceration. The neurological exam on the patient record indicates that defendant was alert and oriented, that he was “slightly altered but [wa]s appropriate,” and that there were no noted neurological deficits. The patient record refers to the odor of alcohol on his breath and to defendant’s admission that he had used alcohol and drugs. The appropriateness of the transport was confirmed by the Internal Quality Management Program that reviews all of plaintiff’s transport decisions. Morgan’s affidavit also indicates that the price charged for the transport of defendant was the customary rate for 2009 and was considerably less than charges for comparable services by air ambulances in another state (comparison was made to Arizona, since New York State apparently has not published air ambulance rates since the year 2000).
Kelly’s affidavit describes the procedures used by Finger Lakes Ambulance to record and maintain data from each call it makes. Finger Lakes Ambulance responded to defendant’s home on October 15, 2009, and its employees called upon the services *487 of plaintiff. Kelly explains that once it is determined that a patient requires transport to a level one trauma center, air transport is called in if ground transport would take more than 20 minutes to get the patient there. Kelly finds the defendant’s patient record “a compelling case for a determination of trauma” because he was unresponsive and gurgling after a fall onto a hard surface, he had a head wound, his combative and disoriented behavior indicated possible concussion, and there was possible substance and alcohol abuse. Defendant’s patient chart with Finger Lakes Ambulance indicates that defendant’s wife told the ambulance workers that defendant had come home from work upset and very depressed and that he had taken all the Xanax pills he had left and had drunk six beers. Finger Lakes Ambulance’s quality assurance department found nothing wrong with the determination of the need for air transport in this case.
Long was the lead medic for the East Bloomfield-Holcomb Fire Department Emergency Squad at defendant’s home on the day in question (Oct. 15, 2009). Long’s affidavit states that defendant’s condition required the dispatch of an advanced life support ambulance, and therefore Finger Lakes Ambulance was called. He believes the use of air transport was appropriate given defendant’s fall down the stairs, his head wound, his loss of consciousness, and the possible involvement of alcohol and drugs.
2. Defendant’s Motion for Dismissal of the Complaint
Defendant’s cross motion for summary judgment dismissing plaintiffs complaint is supported by (1) the affirmation of his attorney Sarah Fifield, with attached exhibits, and (2) defendant’s affidavit, which was filed separately on May 6, 2013. Defendant’s motion alleges, in words or substance, that the air transport by plaintiff was excessive and was not medically necessary. This opinion is based on the decision of BCBS, attached to defendant’s motion papers as exhibit A, and the decision of the external review agent MCMC Medical Care Ombudsman Program, attached to defendant’s motion papers as exhibit B. Both of these entities held, after examining plaintiffs records, that the air lift of defendant was not medically necessary because defendant’s vital signs were stable, there was no gross motor deficit, and defendant was alert and conscious. MCMC also pointed out that the ground ambulance could have gotten defendant to Strong Hospital in 40 minutes, whereas the trip by air did not get him to Strong until 49 minutes after the initial *488 911 call. Defendant further argues that the decision of MCMC is binding on plaintiff and that plaintiffs only remedy for review of that decision would have been a CPLR article 78 proceeding. Plaintiff would have had to file such a proceeding within four months of the February 19, 2010 decision by MCMC. Various authorities in the statutes and case law are cited for this assertion, including Public Health Law § 4914 (b) (4),* holding that state-mandated external reviews of health insurers’ denials of coverage are binding and are admissible in any subsequent court proceeding. Finally, defendant argues that plaintiff is collaterally estopped from bringing this action because the matter was fully litigated in the external review by MCMC.
Defendant’s affidavit attests to the complete accuracy of the statement of facts contained in his attorney’s affirmation. He adds that he is shocked that plaintiff would sue him personally after his insurer denied coverage and points to the incongruity of his paying health insurance premiums to have coverage for necessary medical expenses and then also being expected to pay for services his insurer can avoid paying because it considers those services medically unnecessary. He states that he never consented to or requested the use of air transport and that, per the findings of the insurer’s external review agent, the trip to the hospital would have been quicker by ground ambulance than it was by air ambulance.
Analysis
Plaintiff’s motion is based upon the quasi contract theories of restitution for services rendered and unjust enrichment. Defendant’s motion is based upon the argument that time has run out on plaintiffs only remedy, namely, an article 78 proceeding; that plaintiff is collaterally estopped from suing defendant because of MCMC’s decision that the air lift was not medically necessary; and that MCMC’s decision is prima facie evidence that warrants summary judgment dismissal. Plaintiff’s and defendant’s arguments are evaluated below.
1. Restitution and Unjust Enrichment
Plaintiff cites 22A NY Jur 2d, Contracts § 633 in its attorney affirmation. In the absence of any statutory or regulatory provisions governing the payment of helicopter air ambulance services, this article correctly summarizes the law to be applied to *489 these circumstances. This article concerns the law of restitution in the specific context of implied contracts for services related to preservation of a person’s life or health. It states that a provider of services to another is entitled to restitution even though acting without the other’s knowledge or consent if certain criteria are met, namely, (1) that the provider of services intended to charge for its services, (2) that the services were necessary to prevent the person from suffering serious bodily harm or pain, (3) that the provider of services had no reason to know the recipient of the services would not consent to receiving them, and (4) that it was impossible for the recipient to give consent. “Thus, expenses for medical care provided to a comatose patient could normally be recovered by a provider under the general rule regarding preservation of another’s health.” (22A NY Jur 2d, Contracts § 633, citing Matter of Anderson, 119 Misc 2d 248 [Sur Ct, Saratoga County 1983].)
In applying these four criteria to the case at hand, it is clear that (1) plaintiff intended to charge for its services; (2) plaintiff had no reason to know that defendant would later take the position that he wished the services had not been provided; and (3) due to defendant’s head injury, it was not possible for him to give consent at the time plaintiff’s services were being provided. But there is a serious question about the remaining criterion, whether the services were necessary to prevent defendant from suffering serious bodily harm or pain. Presumably, plaintiff thought they were. The air ambulance services were rendered to defendant in 2009 due to the following chain of events: (1) the determination by the East Bloomfield-Holcomb Fire Department Emergency Squad that an advanced life support ambulance was needed due to the nature of defendant’s injury and the possible complication of ingestion of drugs and alcohol, resulting in Finger Lakes Ambulance being called; (2) the determination by Finger Lakes Ambulance that air transport was needed because defendant needed to go to a level one trauma center and ground transport would take more than 20 minutes to get him there, resulting in plaintiff being called; and (3) plaintiff having taken defendant to the level one trauma center because, in the judgment of the emergency medical personnel at the scene, defendant might need critical care life support during the transport that is not available from the ground ambulance. Each of these decisions appears from the supporting affidavits to have been based upon the protocols used by emergency medical personnel in every case of emergency medical transport.
*490 Beyond the narrow realm of implied contracts involving medical services, restitution is generally required whenever unjust enrichment can be shown. Unjust enrichment is a quasi contract theory because “[i]t is an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties concerned” (IDT Corp. v Morgan Stanley Dean Witter & Co., 12 NY3d 132, 142 [2009]). The theory is that defendant was enriched at plaintiffs expense and that the circumstances were such that, in equity and good conscience, defendant should return the money to plaintiff. “An unjust enrichment claim does not require a wrongful act on the part of the party enriched.” (Jay Safer, Commercial Litigation in New York State Courts § 66:67 [3d ed 4A West’s NY Prac Series].) Once again, in the absence of a statutory or regulatory provision governing the air ambulance’s right to recover for its services, this theory of law correctly applies to the circumstances presented.
2. Article 78 Proceeding as the Sole Option
Defendant argues that plaintiffs only remedy for review of MCMC’s decision was an article 78 proceeding, a remedy that is no longer available due to the passage of time. I disagree.
Insurance Law § 4914 (b) (4) (A) (iv) provides that external review decisions are binding upon the insured and the insurer, and yet section 4914 (b) (4) (A) (v) states that such determinations shall be admissible in any court proceeding, implying that judicial remedies are available after external review decisions. Furthermore, Insurance Law § 4907 provides that “[t]he rights and remedies conferred in this article upon insureds and health care providers shall be cumulative and in addition to and not in lieu of any other rights or remedies available under law.” In Matter of Vellios v Serio (1 Misc 3d 487 [Sup Ct, NY County 2003]), which is the case cited by defendant, an article 78 proceeding was held to be a proper vehicle for appealing the decision of an external appeal agent because the agent was acting as an agent of the State. But there was no language in the court’s opinion stating that article 78 was the only remedy for the plaintiff. In Nenno v Blue Cross & Blue Shield of W. N.Y. (303 AD2d 930 [4th Dept 2003]), the plaintiff was entitled to the Supreme Court action by which he appealed the external appeal agent’s determination that his nursing care was not medically necessary. In Schulman v Group Health Inc. (11 Misc 3d 90 [App Term, 1st Dept 2006]), the court upheld a small claims decision that the insurer must pay the insured $5,000 *491 despite an external appeal agent’s decision denying coverage. The court regarded the term “binding” in Insurance Law § 4914 (b) (4) (A) (iv) as meaning that the external appeal agent’s determination “marks the end of any administrative appeal” (Schulman v Group Health Inc. at 91). This decision was, in turn, affirmed by the First Department (Schulman v Group Health Inc., 39 AD3d 223 [2007]). The Court looked to the legislative history of Insurance Law § 4914 (b) (4) (A) (iv) and (v), finding that the legislators intended to provide a new, low-cost, expedited layer of review for consumers but not to supplant the review already available in the courts. This interpretation is consonant with the reference to cumulative rights and remedies in Insurance Law § 4907.
3. Collateral Estoppel
Defendant argues that because the MCMC decision held that there was no medical necessity for the services rendered by plaintiff to defendant, that issue should be precluded in this proceeding. The Court of Appeals has held that collateral estoppel applies to administrative proceedings as well as to judicial proceedings when the administrative proceedings are quasi-judicial in nature and not just executive or quasi-legislative (Matter of Venes v Community School Bd. of Dist. 26, 43 NY2d 520 [1978]; Brugman v City of New York, 64 NY2d 1011 [1985]). In order for the principle of collateral estoppel to apply, the issue sought to be precluded must be identical in both proceedings and must have been necessarily decided in the prior proceeding. Furthermore, the litigant who will be held precluded in the present proceeding must have had a full and fair opportunity to litigate the issue in the prior proceeding. The burden of establishing the first two elements is on the proponent of issue preclusion, here, defendant. The burden of establishing the full and fair opportunity in the prior proceeding is on the opponent of issue preclusion, here, plaintiff. (Brugman v City of New York, 102 AD2d 413, 417-418 [1st Dept 1984], affd 64 NY2d 1011 [1985].) In addition, issue preclusion only applies to factual determinations by administrative bodies, not to legal conclusions or mixed questions of law and fact. (Akgul v Prime Time Transp., 293 AD2d 631, 633 [2d Dept 2002]; Matter of Engel v Calgon Corp., 114 AD2d 108, 110 [3d Dept 1986].)
Defendant has shown that the issue of medical necessity is identical in this proceeding to the issue that was before MCMC and that it was necessarily determined by MCMC. The proceeding by MCMC was quasi-judicial in nature in that it *492 involved fact-finding and it terminated in an adjudication, namely, that the services rendered to defendant by plaintiff were not covered under defendant’s health insurance policy because of the lack of medical necessity for them. Issue preclusion applies because it was a factual determination based upon defendant’s physical condition as recorded in plaintiffs patient record at the time of transport. However, the plaintiff was not a party to the proceeding with MCMC, and it has a right to litigate the issue of medical necessity in this court. Plaintiff is not collaterally estopped from litigating medical necessity since it did not have a full and fair opportunity to litigate the issue in the prior proceeding between defendant and BCBS.
4. MCMC’s Determination of Lack of Medical Necessity: Is it Dispositive?
We know from the Insurance Law provision cited earlier that MCMC’s determination is admissible in this court. It is prima facie evidence that plaintiffs services were not medically necessary. But contrary to what defendant argues, this is not dispositive of the case. MCMC’s administrative determination is an example of statutorily created “prima facie evidence.” As such, its admission into evidence in this court does more than create an inference: it operates to shift the burden of production from defendant to plaintiff. Plaintiff needs to be given the opportunity to offer competent, credible evidence showing that its services were medically necessary in order to overcome the presumption that they were not. (See Matter of Powers v Powers, 86 NY2d 63, 69 [1995]; Vincent C. Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C4518:9.)
Conclusion
A motion for summary judgment will be granted when the submitted papers warrant the court directing judgment in favor of a party as a matter of law (CPLR 3212 [b]). The basic question with a summary judgment motion is “whether the pleadings, affidavits, and exhibits in support of the motion are sufficient to overcome the opposing papers, and to justify finding, as a matter of law, either that there is no defense to the action or that the . . . defense is without merit” (97 NY Jur 2d, Summary Judgment and Pretrial Motions to Dismiss § 16, citing Phillips v Kantor & Co., 31 NY2d 307 [1972]). If the moving party does make a prima facie showing, then “the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues *493 of fact that require a trial for resolution” (Giuffrida v Citibank Corp., 100 NY2d 72, 81 [2003]). Faced with a summary judgment motion, a court will view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences to be drawn from the evidence (see Negri v Stop & Shop, 65 NY2d 625, 626 [1985]). Summary judgment must be denied if there is any doubt as to the existence of a triable issue (see Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978]).
Here, plaintiff has established that it supplied services to defendant with the expectation of being paid for those services and that it has not been paid. The factual issue in controversy is whether those services were necessary in order to prevent serious bodily harm or pain to defendant. If they can be so characterized, then plaintiff may recover under the quasi contract theories of restitution and unjust enrichment.
Plaintiff’s motion for summary judgment is denied, and defendant’s motion for summary judgment dismissal is denied.

 The correct cite for the relevant section of the Public Health Law is section 4914 (2) (d) (A) (iv) and (v), but in the identical provision in New York’s Insurance Law, the cite is section 4914 (b) (4) (A) (iv) and (v).