[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-11513

_____

D.C. Docket No. 1:11-cv-23948-FAM


ALEXANDRA H.,

Plaintiff - Appellant,

versus

OXFORD HEALTH INSURANCE INC. FREEDOM ACCESS PLAN,

Defendant,

OXFORD HEALTH INSURANCE, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____


(August 16, 2016)

Before HULL, JULIE CARNES, and CLEVENGER,[*] Circuit Judges.

CLEVENGER, Circuit Judge:

Plaintiff Alexandra H. appeals from the district court's grant of Defendant Oxford Health Insurance, Inc.'s motion for summary judgment on Alexandra's claim under the Employee Retirement Income Security Act of 1974, 259 U.S.C. § 1001 ("ERISA"). Alexandra sought benefits for continued partial hospital treatment for her anorexia, which were denied on the ground that the level of care she sought was not medically necessary. After her claim was initially denied through internal reviews by Oxford, she sought and obtained further review through an external process provided by the insurance contract between her employer and Oxford, of which she is a beneficiary. When the external review proved adverse to her claim, she initiated her ERISA suit in the district court.

Alexandra argues that the district court erred in holding that she is barred from litigating the issue of medical necessity in her ERISA case on the ground that the adverse external review of her medical necessity claim already and finally decided the issue against her. She challenges the district court's decision on several grounds. First, she asserts that the record of the external review should be excluded from the ERISA proceedings. Second, she argues that the contract in suit must be interpreted pursuant to choice of law stated in the contract (New York), and that

_____

[*] Honorable Raymond C. Clevenger III, United States Circuit Judge for the Court of Appeals for the Federal Circuit, sitting by designation.

under New York law, the adverse external review decision is not binding on the medical necessity issue in her ERISA case. And third, she contends that if the record of the external review is properly in the record before the ERISA court, and if the result of the external review is deemed to bar her ERISA remedy, then the external review process is preempted by ERISA, with the effect of the preemption being that she may proceed with her ERISA case in district court as if the external review had not occurred.

Understandably, Oxford maintains that the record of the external review should be before the ERISA court, that the adverse decision of the external review should preclude further litigation of the medical necessity issue in the ERISA case, and that the external review process if thusly enforced in the district court is not preempted by ERISA.

Common in ERISA appeals, the answers to the questions presented can be found by interpreting the contract that creates the relationships of the parties. Sometimes, the interpretation process is simple and direct. In other cases, such as this one, the interpretation process is more complex.

After careful consideration of the parties' briefs, the record in the case, and with the benefit of oral argument presented to the court, we conclude that the district court correctly decided that the record of the external review is properly before the district court in this ERISA case, but erred in holding that the adverse

external review decision barred Alexandra from presenting her challenge to the adverse medical necessity determination. Because the external review process does not conflict with ERISA, it is not preempted. Accordingly, we affirm in part, reverse in part and remand for further proceedings.

## I.  BACKGROUND

While Alexandra was a second grade teacher at St. Ann's School in Brooklyn, New York, she was enrolled in an employee benefits plan that provided healthcare services. The benefits plan was sponsored by her employer and insured by Oxford. Because the plan relates to employee welfare benefits, it is governed by ERISA.

## A. Employee Benefits Plan and Appeal Process

Alexandra's benefit plan covers various medical services, including mental health services. The plan specifically covers "diagnosis and treatment of Biologically Based Mental Illnesses for adults and children received on an inpatient, partial hospitalization or outpatient basis." One of the listed "Biologically Based Mental Illnesses" that the plan covers is "bulimia and anorexia." The plan does not cover services that Oxford determines are not "Medically Necessary." The plan defines "Medically Necessary" to mean:

**Medically Necessary:** Services or supplies as provided by a Hospital, Skilled Nursing Facility, Physician or other provider required to identify or

4

treat your illness or injury and which, as determined by Our [i.e, Oxford's]

Medical Director, are:

1. Consistent with the symptoms or diagnosis and treatment of your

condition;

2. Appropriate with regard to standards of good medical practice;

3. Not solely for your convenience or that of any provider; and

4. The most appropriate supply or level of service which can safely be

provided. For inpatient services, it further means that your condition

cannot safely be diagnosed or treated on an outpatient basis.

Unless otherwise indicated in this Certificate, determinations as to Medical

Necessity are made by Us [i.e., Oxford], and such determinations are solely

within Our [i.e., Oxford's] discretion.

The plan thus grants Oxford the sole discretion to determine internally if a

particular kind of healthcare service is medically necessary and therefore covered

by the plan. If a plan beneficiary disagrees with an adverse medical necessity

determination by Oxford, she has two different review processes available to her.

She must first appeal the decision internally, meaning that Oxford itself reviews

the initial adverse medical necessity determination. If Oxford decides to uphold the

adverse determination, the participant can go through a second appeal. The

participant can choose between two second appeal options: 1) a second internal

appeal conducted by Oxford, or 2) an external appeal administered by the State of New York. If the participant chooses to do a second internal appeal through Oxford and Oxford upholds the adverse determination for a second time, the participant may then choose to pursue an external review. As mandated by New York Insurance Law § 4914, and as enshrined in Oxford's plan, the external review process shall:

- be conducted only by one or a greater odd number of Clinical Peer Reviewers.

- be accompanied by a notice of Appeal determination which will include the reasons for the determination. Where the FAD [i.e., final adverse determination] is upheld on Appeal, the notice will include the clinical rationale (if any) for the determination.

- be subject to the terms and conditions generally applicable to benefits under your Certificate.

- be binding on Us [i.e., Oxford] and you [i.e., the participant].

- be admissible in any court proceeding.

Further, and as will be explained later, importantly, the plan states that it is governed by the laws of the State of New York.

6

**B. Alexandra H's Benefits Claim**

Alexandra has a history of an eating disorder called anorexia nervosa, starting when she was 14 years old. According to an intake assessment form from November of 2009, she has been hospitalized approximately 15 times and participated in numerous day treatment programs. Alexandra has also been hospitalized for two suicide attempts.

On December 14, 2010, Alexandra was admitted to Oliver-Pyatt Centers ("Oliver-Pyatt"), an eating disorder treatment facility in Miami, Florida. She was 5 feet, 6 inches tall and weighed 110 lbs., which was 15 lbs. less than the ideal body weight of 125 lbs. Alexandra was severely depressed and was restricting and binging her food. Oliver-Pyatt admitted her for partial hospitalization level of care to treat her depression and anorexia.

Oxford initially approved Alexandra's claim for benefits to cover her partial hospitalization level of care at Oliver-Pyatt from December 14 to December 16. On December 17, Oxford spoke with Angie Gonzalez, a therapist at Oliver-Pyatt, who reported that Alexandra weighed 111.4 lbs. and was eating 50-75% of her daily 1,200-calorie meal plan, but was not cooperating with the treatment plan. After talking with Dr. Lawson, a physician at Oliver-Pyatt, Oxford approved Alexandra's partial hospitalization treatment from December 14 to December 26. After checking in with Oliver-Pyatt on December 27, Oxford approved coverage

7

for Alexandra's continued care at this level through January 3, 2011. There is no dispute about the coverage from December 14, 2010 through January 4, 2011.

On January 4, 2011, Dr. Lawson reported to Oxford that Alexandra weighed 113 lbs. and was eating 100% of her daily 1,500-calorie diet. Dr. Lawson said that Alexandra was compliant with the treatment, but continued to have depressive episodes. Oxford then advised Alexandra that her claim for continued treatment at the partial hospitalization level of care was denied as of January 5, 2011, because the treatment was not medically necessary. Oxford explained that Alexandra had "shown improvement in symptoms and functioning with no severe symptoms at [that] time" and any ongoing treatment could "be addressed in a[n] intensive outpatient level of care." Oxford further informed Alexandra that she could appeal the decision and gave her a detailed explanation of her appeal rights.

## C. Alexandra's Internal Appeals

On January 5, 2011, Alexandra requested an expedited appeal of the decision and Oxford's Medical Director, Dr. Lee Becker, who is board certified in psychiatry, reviewed the appeal. Dr. Becker also determined that partial hospitalization was not medically necessary as of January 5, 2011, and notified Alexandra of his decision by letter on January 6. Dr. Becker informed Alexandra that his decision was based on her "improvements in the initial precipitating symptoms" and "there no longer [being] such significant impairments in

8

psychosocial functioning, due to severe symptoms/behaviors, [which require] this intensity of structure and monitoring." The letter also set forth Alexandra's appeal rights.

On January 17, 2011, Alexandra requested a second appeal through Oxford. The appeal letter contained statements from Oliver-Pyatt staff saying that as of January 5, when coverage was denied, Alexandra "was struggling with severe depression and suicidal ideation" and thus it was "highly inappropriate and dangerous to step her down to a lower level of care." Oxford's Dr. Theodore Allchin, who is board certified in psychiatry and child and adolescent psychiatry, reviewed Alexandra's appeal and again approved the denial of coverage finding that partial hospitalization was not medically necessary as of January 5. By letter dated February 8, 2011, Oxford informed Alexandra of its decision to uphold the adverse determination, stating that Alexandra did not meet the medically necessity criteria because her weight and vital signs were stable and there was "no evidence that the patient would require a higher level of care without this intensity of services." The letter notified Alexandra of her right to an independent external appeal through the New York State External Appeal Process. The denial letter also explained that "[a]n external appeal agent's medical necessity decision is binding upon both the member and Oxford" and the external review "process is not part of

9

the member's rights under ERISA." The letter further stated that Alexandra "may have the right to file a civil action under 502(a) of [ERISA]."

## D.  Alexandra's External Appeal

Following her unsuccessful administrative appeals through Oxford, Alexandra requested an external appeal, as provided under New York Insurance Law § 4910. Her external appeal was assigned to the Medical Care Ombudsman Program, MCMC. MCMC had a board certified physician in psychiatry independently review Alexandra's case. On March 18, 2011, the physician concluded that Oxford's determination that Alexandra's treatment was not medically necessary as of January 5 should be upheld. As a result, Oxford did not reverse its denial of Alexandra's claim.

## E.  District Court Proceedings

On November 2, 2011, Alexandra filed suit against Oxford in the U.S. District Court for the Southern District of Florida, seeking an award of benefits under ERISA § 502(a)(1)(B). Oxford then provided Alexandra with a copy of the administrative record, which included the decision from the external appeal. On June 1, 2012, Alexandra issued a subpoena duces tecum to MCMC, who conducted the external review. Oxford moved for a protective order to quash the subpoena, but the district court denied the motion.

10

On August 17, 2012, Alexandra moved to strike the external appeal from the administrative record. The district court granted the motion finding that "the external appeal proceedings do not constitute a part of the record for purposes of ERISA review." Oxford then moved to reconsider the order striking the external appeal or, alternatively, certify the question for interlocutory appeal. The district court reconsidered the motion to strike and modified its previous order to include the external appeal in the administrative record. The district court also stated that "[b]ecause the external reviewer's decision is presumably dispositive of the claim, Plaintiff has three weeks to show cause why judgment should not be granted in favor of Defendant." Alexandra responded to the order to show cause. The district court subsequently issued a second order on August 25, 2014, finding "that the external appeal upholding Plaintiff's denial of benefits is conclusive as to the issue of medical necessity, but Plaintiff may conduct discovery as to whether the external reviewer had any conflict of interest that may have biased the decision."

Pursuant to the district court's order, Alexandra sought discovery against MCMC in Massachusetts (where MCMC is located) regarding whether MCMC had any conflict of interest that affected the external appeal. MCMC filed a protective order against the discovery in Massachusetts court. Meanwhile, Alexandra asserted she was not able to obtain the discovery that the District Court in Florida had allowed.

11

After the allotted discovery time passed, both parties moved for summary judgment. The motions were referred to Magistrate Judge John J. O'Sullivan, who recommended granting Oxford's motion for summary judgment and denying Alexandra's. Magistrate Judge O'Sullivan found that Alexandra had "not shown that the external reviewer's determination of the issue of medical necessity" was tainted or biased and thus the external review's decision on medical necessity of the treatment was binding on the parties. The district court adopted the magistrate's recommendations in an order on March 24, 2015, and entered judgment in favor of Oxford. Alexandra timely appealed to this Court.

## II. STANDARD OF REVIEW

We "review *de novo* a district court's ruling affirming or reversing a plan administrator's ERISA benefits decision, applying the same legal standards that governed the district court's decision." *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011). We also review *de novo* a district court's grant of summary judgment. *Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1404 (11th Cir. 1994). Summary judgment is appropriate where there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a).

12

### III.    DISCUSSION

#### A. The Governing Law

Under § 1132 of ERISA, a plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). While ERISA itself offers no guidance as to how courts should interpret provisions of an employee welfare benefits plan, it is well established that federal courts "have the authority to develop a body of federal common law" to govern the interpretation and enforcement of benefit plans in ERISA cases. *Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1234–35 (11th Cir. 2006); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987); *Hauser v. Life Gen. Sec. Ins. Co.*, 56 F.3d 1330, 1333 (11th Cir. 1995), *as amended on denial of reh'g* (Sept. 15, 1995).

In deciding whether to adopt a certain rule into the federal common law, courts must examine whether the proposed rule would further ERISA's scheme and goals. *Dixon v. Life Ins. Co. Of N. Am.*, 389 F.3d 1179, 1183 (11th Cir. 2004). "ERISA has two central goals: (1) protection of the interests of employees and their beneficiaries in employee benefit plans; and (2) uniformity in the

13

administration of employee benefit plans." *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1041 (11th Cir. 1998) (internal citations omitted).

"When crafting a body of common law, federal courts may look to state law as a model because of the states' greater experience in interpreting insurance contracts and resolving coverage disputes." *Id.*; *Hauser*, 56 F.3d at 1333. Borrowing from state contract law, the district courts have further developed rules of contract interpretation for construing ERISA plans. *See e.g.*, *Epolito v. Prudential Ins. Co. of Am.*, 737 F. Supp. 2d 1364, 1373 (M.D. Fla. 2010); *Smith v. Cont'l Cas. Co.*, 616 F. Supp. 2d 1286, 1296 (N.D. Ga. 2007); *Luton v. Prudential Ins. Co. of Am.*, 88 F. Supp. 2d 1364, 1370–71 (S.D. Fla. 2000); *Harrison v. Aetna Life Ins. Co.*, 925 F. Supp. 744, 748-49 (M.D. Fla. 1996).

We first look to the plain and ordinary meaning of the policy terms to interpret the contract. *Smith v. Cont'l Cas. Co.*, 616 F. Supp. 2d at 1296 (citing *Bedinghaus v. Modern Graphic Arts,* 15 F.3d 1027, 1029–30 (11th Cir.1994)); see also *Billings v. UNUM Life Ins. Co. of Am.*, 459 F.3d 1088, 1094−95 (11th Cir. 2006). A term is ambiguous if it is susceptible to two or more reasonable interpretations that can be fairly made. *Novak v. Irwin Yacht & Marine Corp.*, 986 F.2d 468, 472 (11th Cir. 1993); *Luton*, 88 F. Supp. 2d at 1370–71 (citing *Dahl–Eimers v. Mutual of Omaha Life Ins. Co.,* 986 F.2d 1379 (11th Cir.1993)). We have further established that once we conclude a term is ambiguous, the rule of

14

*contra proferentem* requires us to construe any ambiguities against the drafter. *Billings*, 459 F.3d at 1095; *Jones v. Am. Gen. Life and Acc. Ins. Co.*, 370 F.3d 1065, 1070 (11th Cir. 2004). These rules of contract interpretation are generally accepted as part of the federal common law. *See Tippitt*, 457 F.3d at 1234–37; Kathryn J. Kennedy, *Judicial Standard of Review in ERISA Benefit Claim Cases*, 50 Am. U. L. Rev. 1083, 1121–22 (2001) ("In the absence of explicit language, many of the circuits have used the contract principles of plain meaning and contra proferentum, if appropriate, to interpret plan provisions, affording the plan language its "plain meaning" and construing ambiguous language against the drafting party.").[1]

In the Eleventh Circuit, we have also enforced choice-of-law provisions in ERISA contracts and used state law to interpret terms in the ERISA contract when the state law was not unreasonable or fundamentally unfair. *Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1149 (11th Cir. 2001); *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1196–97 (11th Cir. 2010). In *Buce*, we grappled with whether to apply federal common law or state law to interpret the meaning of "accident" in an ERISA plan. Walter Buce died in a single-vehicle crash and was later shown to have been driving under the influence of alcohol. *Buce*, 247 F.3d at 1136. Buce

---

[1] Our sister circuits appear to be in agreement with these canons of interpretation and have applied similar rules of construction in ERISA cases. *See, e.g.*, *Harris v. The Epoch Grp., L.C.*, 357 F.3d 822, 825 (8th Cir. 2004); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998); *Bullwinkel v. New England Mut. Life Ins. Co.*, 18 F.3d 429, 431 (7th Cir. 1994).

had a Personal Accident Insurance Plan, which provided that the plan was to be interpreted under the laws of the State of Georgia. *Id.* His wife brought suit to claim the benefit under the plan for her husband's death after the insurance company denied the claim. *Id.* at 1136–37. The insurance company reasoned that Buce's death was not an accident because the policy required the injury to be caused by accidental means, which required some sudden, unexpected, and unforeseen act that led to the injury. *Id.* at 1137. This definition of "accident," referred to as "accidental means," was consistent with Georgia law. *Id.* at 1144. Because Buce had been intoxicated at the time of the accident, the insurance company determined that his death was not an accident within the meaning of the policy. *Id.* at 1137.

We explained that when deciding whether to honor a choice of law provision in an ERISA plan, "[t]he pertinent question is whether the principles of liability agreed upon by the parties are inconsistent with the language of ERISA or the policies that inform that statute and animate the common law of the statute." *Id.* at 1148. We held that Georgia's interpretation of accident, while subject to formidable criticism, was not contrary to ERISA. *Id.* at 1148–49. "Where a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair." *Id.* at 1149. Finding no signs of unreasonableness or unfairness, we upheld the choice of law provision.

We again honored a choice of law contract contained in an ERISA welfare benefit plan in *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189 (11th Cir. 2010), holding that a choice of law provision should be followed as long as it is consistent with ERISA and not unreasonable or fundamentally unfair.

In this case, Alexandra argues that New York state law should apply to interpret the insurance contract because her benefits plan states that it is governed by New York law. In 1998, the State of New York enacted New York Law Ch. 586, S. 7838, titled "Public Health, Insurance—Contract Terms—External Appeals." 1998 Sess. Law News of N.Y. Ch. 586 (S. 7838) (McKINNEY'S). Section 4910 "established an enrollee's right to an external appeal of a final adverse determination by a health care plan."[2] The procedures for the external appeal process were laid out in § 4914. Relevant to this case, § 4914 provides that an external appeal shall "(i) be conducted only by one or a greater odd number of clinical peer reviewers, (ii) be accompanied by a notice of appeal determination which shall include the reasons for the determination; provided, however, that where the final adverse determination is upheld on appeal, the notice shall include the clinical rationale, if any, for such determination,(iii) be subject to the terms and conditions generally applicable to benefits under the evidence of coverage under

---

[2] The only difference in the law as enacted in 1998 from its current state is that "enrollee" has been changed to "insured." *See* N.Y. Ins. Law § 4910 ("There is hereby established an insured's right to an external appeal of a final adverse determination by a health plan.")

the health care plan, (iv) be binding on the plan and the insured, and (v) be admissible in any court proceeding." N.Y. Ins. Law § 4914(b)(4)(A).

Alexandra's ERISA plan parrots this language almost verbatim and declares that an external appeal from Oxford will be binding on both parties and admissible in any court proceeding. Alexandra points to a body of New York court cases that consistently interpret the "binding" language in the New York statute, as repeated almost verbatim in Oxford's plan. While these cases are not ERISA cases, they are all interpreting New York Insurance Law § 4914, which is central to this case.

The first such case, in time, is *Nenno v. Blue Cross & Blue Shield of W. New York*, 303 A.D.2d 930 (N.Y. App. Div. 2003), *reh'g and appeal denied*, 306 A.D.2d 960, (N.Y. App. Div. 2003). In *Nenno*, the Appellate Division of the New York Supreme Court[3] considered the meaning of the language in New York Insurance Law § 4914, specifically the phrases "binding of the plan and the insured" and "admissible is any court proceeding." *Nenno*, 303 A.D.2d at 932. The Nenno family had a health insurance policy that covered up to $3,000 per year of private duty nursing case and unlimited care in a skilled nursing facility for their son Jeffrey, who was born with cerebral palsy-quadriplegia. *Id.* at 930−31. In 1986, the insurance company agreed to pay for private, in-home skilled nursing care because the cost of the in-home care was less than the alternative cost of the

---

[3] In the New York court system, the Appellate Division of the Supreme Court resides just below the Court of Appeals, which is the highest court in New York.

unlimited skilled nursing care. *Id.* at 931. The insurance company covered this cost

up until 2001, when it then determined that the in-home level of care was no longer

medically necessary and thus was no longer covered by insurance. *Id.* The Nenno

family appealed the decision twice through the insurance company's internal

appeal process, with both appeals affirming the adverse determination that the care

was not medically necessary. *Id.* The Nennos then pursued an independent external

appeal, as provided by New York law, that again upheld the adverse finding.

The Nenno family commenced a breach of contract action in state court and

the insurance company moved to dismiss the complaint based on res judicata or

collateral estoppel, arguing that the external appeal was binding and precluded the

lawsuit. *Id.* The Appellate Division held that the "binding" language in New York

Insurance Law § 4914 did not bar Nennos' action. *Id.* at 932. The court reasoned

that while § 4914 provides that the external appeal shall "be binding on the plan

and the insured," the statute also declares that the external appeal shall "be

admissible in any court proceeding." *Id.* The court also pointed to § 4907, which

ensures that "[t]he rights and remedies conferred in this article upon insureds and

health care providers shall be cumulative and in addition to and not in lieu of any

other rights or remedies available under law." *Id.* Thus, the court determined that

New York Legislature "made clear that insureds and health care providers are

19

entitled to pursue all of their rights and remedies available in a court of law, regardless of whether they have sought and obtained an external appeal." *Id.*

The issue of defining "binding" within the context of New York Insurance Law § 4914 came up for the second time before the Supreme Court of New York County[4] in *Vellios v. IPRO, External Review Agent*, 1 Misc. 3d 468 (N.Y. Sup. Ct. 2003). In *Vellios*, the New York court dealt with a similar set of procedural facts: Loula Vellios was denied coverage of her brain cancer treatment because the treatment was part of an experimental program. *Vellios*, 1 Misc. 3d at 469–70. Such experimental programs were not covered by Vellios's health care plan. *Id.* at 470. Like the Nennos family, Vellios appealed the adverse determination internally through her insurance company, which upheld the denial of coverage. *Id.* Vellios then pursued an external appeal. *Id.* The external appeal again determined that the insurance company's denial of coverage was proper. *Id.* at 471. Vellios filed suit against the external appeal agent challenging the external appeal determination.[5] *Id.* The external appeal agent moved to dismiss, contending, as relevant here, that the external review was binding on Vellios. *Id.* The court followed *Nenno* and

---

[4] In New York state, the Supreme Courts are trial courts. Decisions of the Supreme Courts may be appealed first to Appellate Terms of the Supreme Court, thereafter to Appellate Divisions of the Supreme Court, and finally to the Court of Appeals.

[5] Vellios also filed suit against the superintendent of her insurance company, but the claim was dismissed because the court found that the ultimate determination of an external appeal rested with the external appeal agent. *Vellios*, 1 Misc. 3d at 471. The court explained that the superintendent did not have any power to alter or review the external appeal decision and thus there was no action made by the superintendent which could be reviewed by the court regarding the external appeal. *Id.*

20

found that this argument had no merit because the "binding" language in § 4914 was not meant to prevent insureds or heath care providers from pursuing their legal rights and remedies under the law. *Id.* at 471–72. Instead, the court understood the term "binding" in § 4914 to "mark the end of any administrative appeal," but not to bar court review. *Id.* at 472.

In a third case, *Schulman v. Grp. Health Inc.*, 39 A.D.3d 223 (N.Y. App. Div. 2007), the Appellate Division again held that external appeals do not preclude an insured from seeking redress in court. Following both *Nenno* and *Vellios*, the court explained that the "[t]he primary purpose of this external appeal law [i.e., New York Insurance Law § 4914] was to create a new layer of independent and impartial administrative review, which did not previously exist, and which would provide consumers with a low-cost, expedited review option in addition to the courts." *Schulman*, 39 A.D.3d at 224. The court determined that barring judicial review would go against the statutory scheme and the legislative intent of the external appeal law. *Id.* If the external appeal did preclude judicial review, the court stated that there would be no mechanism for reviewing erroneous or arbitrary external appeal decisions. *Id.* The court found that such an outcome would be inconsistent with the statute's purpose and detrimental to both insurers and insureds. *Id.*

21

In New York's most recent case on this issue, *Mercy Flight Cent., Inc. v. Kondolf*, 41 Misc. 3d 483 (N.Y. City Ct. 2013), the court dealt with a slightly different factual situation.[6] In *Mercy Flight*, James Kondolf fell down the stairs while under the influence of alcohol and drugs and suffered a head laceration. *Mercy Flight Cent.*, 41 Misc. 3d at 486. An ambulance responded to the scene and called for Mercy Flight Central, Inc.'s air transport services to get Kondolf to a trauma center. *Id.* Kondolf's insurance company denied coverage for the air transport on the basis that it was not medically necessary. After losing an internal appeal, Kondolf pursued an external appeal, which also found the flight service not medically necessary. *Id.* at 485. Mercy Flight Central then brought suit against Kondolf to recover expenses for the flight service. *Id.* Kondolf argued, among other things, that he was not responsible for the expenses because the flight service was not medically necessary. *Id.* at 487–88. Kondolf contended that the external appeal decision finding on medical necessity was binding on Mercy Flight Central, citing New York Insurance Law § 4914(b)(4). *Id.* Relying on the Appellate Division precedents in *Nenno* and *Schulman*, the *Mercy Flight* court held that the external appeal was not dispositive of the medical necessity finding and that Mercy Flight could challenge the issue in court. *Id.* at 490–91, 492.

---

[6] Like *Vellios*, *Mercy Flight* was decided by a trial court, the City Court of Canandaigua.

22

Additionally, the legislative history of the New York Insurance Laws explains that the purpose of the addition of the external appeal process to challenge a denial of benefits is to provide a cost effective, independent and impartial layer of review in addition to court review. New York Bill Jacket 1998 S.B. 7838, Ch. 586 ("In establishing a procedure for appeals to be heard by an external review agent, the bill provides a mechanism for consumers to obtain an independent, impartial opinion regarding coverage determinations."); *Id.* ("Currently, certain insurance and HMO policies exclude coverage for . . . procedures or services which are not deemed to be 'medically necessary,' without providing for an external review of that determination. Not only is there a lack of uniformity among plans regarding standards for coverage, the court system has been forced to deal with disputes arising over these issues, and the approach is costly to both patients and third-party payors."). However, New York Insurance Law § 4907 demands, this external review is not to alter or impede and insured's rights under ERISA.

ERISA is also silent on which standard of review applies to actions challenging adverse benefit determinations. However, the Supreme Court has established a framework for determining the proper standard for reviewing ERISA cases. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989); *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). In an ERISA case, the standard of review for summary judgment depends on whether the administrator had discretion

23

to deny a claim. In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court said that "a denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. . . . [I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone*, 489 U.S. at 115.

In accordance with this framework, we apply the following six-step test to determine which standard is appropriate in a given case:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable"

grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011). Thus, in ERISA cases, the default standard of review is de novo unless the plan vests discretion in the plan administrator to determine benefit claims. *Firestone*, 489 U.S. at 115.

**B. Application of Governing Law to this Case**

The issue in this case is whether the external review precludes Alexandra from bringing an ERISA action under 29 U.S.C. § 1132(a)(1)(B) in district court to challenge the medically necessity determination of her treatment. However, as an initial matter, we must determine whether the external review is part of the administrative record. If it is not, there is no need to determine whether it is binding on the parties in district court.

### 1. Whether the External Review is Part of the Administrative Record

On Alexandra's motion to strike the external appeal from the record, the district court initially decided that the external review was not part of the administrative record and granted Alexandra's motion. **[Doc. 111]** The court reasoned that an external review operates alongside the review process provided by ERISA and does not supplant or supplement the ERISA process. The court further stated the court's role in an ERISA case is to review the decision of the plan administrator, here Oxford. Because Oxford could only actively affirm the external appeals result, the court determined that Oxford had no discretion in the external review determination. Without this discretion, the court held that the external review was not part of the administrative record before Oxford.[7] Oxford moved to reconsider and after a hearing and additional briefing on the issue, the court reversed. **[Doc. 127]** The court instead decided that the external review is part of the administrative record because it informed Oxford's ultimate decision to deny benefits in this case.[8]

---

[7] Because the court determined that the external review was not part of the administrative record and the court's role was only to review the administrative decision, the court stated that the arbitrary and capricious standard applied when reviewing Oxford's decision to deny benefits.

[8] While the court found that the external appeal was ultimately part of the record, the court determined that this result changed the standard of review that applied to this case. The court explained that because Alexandra pursued an optional, yet binding, external appeal, the resulting external decision removed Oxford's discretion to deny benefits. Accordingly, the court held that the de novo standard of review applied because Oxford's discretion in the matter had been removed.

It is well established that in reviewing a denial of ERISA benefits, the relevant evidence is limited to the record before the administrator at the time the decision was made. *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008); *Jett v. Blue Cross & Blue Shield of Alabama, Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989) (stating that the court's review is "based upon the facts as known to the administrator at the time the decision was made"). Alexandra argues that the administrative record closed on February 8, 2011, when Oxford denied Alexandra's claim for a second time by issuing a final adverse determination. Thus, Alexandra maintains that the external review is not part of the administrative record reviewable by the court because it came after the agency had concluded its internal appeals and conclusively denied Alexandra's benefits claim. Oxford contends that it did consider the external review because Oxford would have been required by the benefits plan to reverse its denial decision if the external review had so found. Because it would have inherently been required to comply with the external appeal agent's decision, Oxford argues that the external review is part of the administrative record. We agree with Oxford.

The record shows that Oxford received the decision from the external review on March 18, 2011. Factually, the external review was part of Oxford's administrative file. Oxford's records acknowledge that the external review upheld the decision to deny benefits and so Oxford did not change its decision to deny

27

coverage. The benefits plan states that "[i]f the External Appeal Agent overturns Our decision that a service was not Medically Necessary or approves coverage of an experiment or investigational treatment, We will provided coverage subject to the other terms and conditions of this Certificate." Accordingly, Oxford would have been obligated to provide coverage if the external review had declared Alexandra's treatment medically necessary. It follows that Oxford's ultimate decision on Alexandra's claim would not have been made until after Oxford received the external review. Thus, the administrative record before Oxford should include the external review.

This result is also proper as a matter of fairness and reasonable expectations. Alexandra elected to appeal the adverse benefits determination externally before bringing a civil action in court. Her plan allowed her to pursue this additional external appeal, but also mandated that the external review be admissible evidence in any court proceeding. If the external appeal decision had instead determined that Oxford had wrongly denied Alexandra's claim but Oxford refused to cover the claim, Alexandra would most certainly expect that the external appeal be included in the administrative record in a court action to recover her benefits. In the reality that the external review upholds the adverse determination, as here, the inclusion of the external review should be the same in fairness to Oxford. Alexandra is seemingly asking for a win-win situation where if she wins the external appeal, it's

in the record, if she loses, it's out. But she cannot have it both ways. The inclusion of the external appeal in the record cannot depend on which party it benefits. Because the external review was part of the material that Oxford considered in making its decision on Alexandra's benefits claim, it is part of the administrative record regardless of what the external reviewer decided on the merits of the claim. And, finally, as a matter of contract, Alexandra claims the benefit of a contract that expressly provides that the external review is admissible in court.

We thus conclude that the external review is part of the administrative record in this case.

## 2.  Whether the External Review is Binding on the Parties in Federal Court

Because the external review is part of the administrative record, we now turn to the central question of whether the external review bars Alexandra from challenging the medically necessity of her treatment in court.

Section 1132 of ERISA allows a participant or beneficiary of an employee benefits plan to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Before bringing such an action in district court, the participant must "exhaust available administrative remedies under their ERISA-governed plans." *Springer v. Wal-Mart*

29

*Associates' Grp. Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990). This exhaustion requirement appears to only apply to internal appeals and does not encompass external appeal remedies, such as the one at issue in this case. *Id.* at 901 (finding that the ERISA plaintiff was required to exhaust her *internal* appeals process before bringing a civil action); *see also Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 385 (2002) ("[ERISA] simply requires plans to afford a beneficiary some mechanism for *internal* review of a benefit denial, 29 U.S.C. § 1133(2), and provides a right to a subsequent judicial forum for a claim to recover benefits, § 1132(a)(1)(B)." (emphasis added)).

Consistent with ERISA, Alexandra's insurance policy allows for internal appeals of adverse determinations on benefits claims. After pursuing at least one internal appeal through Oxford, the insured may request an external appeal. Specifically, the plan provides for an external review conducted "through the New York State External Appeal Process." The plan states that the external appeal determination will "be binding on Us and you" and "be admissible in any court proceeding," repeating almost verbatim what is required for external appeals in New York Insurance Law § 4914(b)(4)(A)(iv)–(v). The external appeal is reviewed by an independent entity certified by the state to conduct such appeals.

Alexandra opted to pursue an external appeal after two unsuccessful attempts to appeal the denial of benefits through Oxford internally. The external

appeal upheld Oxford's decision, agreeing that partial hospitalization treatment was not medically necessary. The district court found that because the plan declared that the external appeal was binding, the external appeal was conclusive on the medical necessity issue. Thus, the court precluded Alexandra from challenging the medical necessity of her treatment in court and limited review of the external appeal to whether the external review was bias or inaccurate.

To determine whether the district court properly found that the external review is binding on the medical necessity issue and thereby prevents Alexandra from challenging this finding on the merits in court, we must interpret the language of the benefits plan. This is an ERISA plan and thus, as discussed above, the rules of contract interpretation from the federal common law apply.

Alexandra's benefits plan states that the plan "is governed by the laws of the State of New York." The plan also specifies that "[t]he laws of the State of New York shall be applied to interpretations of this Certificate." The choice of New York law thus becomes important when interpreting what "binding" means in the plan.

From our discussion above of the New York case law concerning § 4914, it is clear and undisputed that New York courts have consistently held that the term "binding" does not preclude an insured from challenging the merits of an external appeal in court. *Nenno*, 303 A.D.2d at 932; *Schulman*, 39 A.D.3d at 224; *Vellios*, 1

31

Misc. 3d at 472; *Mercy Flight Cent., Inc.*, 41 Misc. 3d at 490–91. Instead, New York courts have explained that "binding" means the external review decision marks the end of the administrative appeal process. *Vellios*, 1 Misc. 3d at 472 ("The provision making the external appeal agent's determination binding must be construed to mean that it marks the end of any administrative appeal, inasmuch as there is no one, including the Superintendent of Insurance, empowered to conduct a further review, but that it does not bar a review of the determination by a court.").

Oxford does not seriously contest what the New York cases stand for (i.e., that "binding" does not mean binding on the merits and thus does not preclude challenging the medical necessity determination). Oxford also does not belittle the New York case law on the ground that it comes from a level below the Court of Appeals. The relevant law is long-standing and settled in New York insurance law. *See* 70 N.Y. JUR. 2D INSURANCE § 1507; William Pitsenberger, *"Sez Who?": State Constitutional Concerns with External Review Laws and the Resulting Conundrum Posed by Rush Prudential Hmo v. Moran*, 15 Conn. Ins. L.J. 85, 102 (2008). Instead, Oxford argues that the New York case law does not apply to this case because the state cases construing the term "binding" did not involve ERISA-governed plans.[9] The district court agreed and declined to consider the New York

---

[9] Further, Oxford argues that we should not apply the New York cases because they are res judicata cases. We do not find this distinction helpful. Instead, this argument ignores the true issue in this case: whether the external review is binding in such a way as to preclude Alexandra

case law to interpret the benefit plan. Instead, the district court stated that it is only bound by federal common law ERISA interpretations, citing *Schultz v. Metro. Life Ins. Co.*, 994 F. Supp. 1419, 1421 (M.D. Fla. 1997) (where the court declined to rely on Florida state court decisions to define what qualified as an "accident" under an ERISA plan and instead using federal common law to interpret "accident").

As discussed above, to develop the federal common law, courts may look to state law as an example. *Tippitt*, 457 F.3d at 1235. "To decide whether a particular rule should become part of ERISA's common law, courts must examine whether the rule, if adopted, would further ERISA's scheme and goals, which include: (1) protection of the interests of employees and their beneficiaries in employee benefit plans; and (2) uniformity in the administration of employee benefit plans." *Id.* (internal citation omitted). Adopting New York's interpretation of "binding" would further these goals.

ERISA allows a plan participant to bring suit "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). ERISA specifically allows a plan participant to challenge a decision on benefits in court. If the external review is not binding, there is no interference with this ERISA remedy. An insured is able to bring a civil action regardless of whether or not they pursue an external appeal.

from bringing her claim in district court. The issue here is the same. The res judicata issue presented in the New York case law speaks directly on this point, making it all the more relevant.

33

In fact, if we were to find the other way and hold that the external review is binding on the issue of medical necessity, the result would actually undermine the remedial scheme outlined in ERISA. If this were the case, the external appeal would act as binding arbitration and prevent the plan participant from utilizing their ERISA remedy.

Further, federal common law also requires us to honor a plan's choice of law provision as long as the state law is not unreasonable or fundamentally unfair. *Buce*, 247 F.3d at 1149. There is nothing in the record to suggest applying New York is unreasonable or unfair in this case. Alexandra was employed as a teacher in New York and obtained the benefits plan through this employment. The plan contains a valid choice of law provision, putting both parties on notice of the governing law. Under such circumstances, it is reasonable to expect New York law to apply to any disputes over the plan. Consequently, in this case, it is appropriate to interpret "binding" as New York does and hold that the external appeal is not binding so as to preclude judicial review. Thus, the district court erred in declining to give the New York cases their proper weight.

As a matter of New York state law, the external review has uniformly been declared to be not dispositive of a medical necessity determination. Because of the choice of law provision in the plan, we accept New York's interpretation and hold

34

that the external appeal decision does not bar judicial review of the merits in this case.

In preparation for the external appeal process, Alexandra signed a consent form releasing her medical records to the external appeal agent for review. The consent form reads the following, in relevant part:

> I acknowledge that the decision of the external appeal agent is binding. I agree not to commence a legal proceeding against the external appeal agent to review the agent's decision; provided, however, this shall not limit my right to bring an action against the external appeal agent for damages for bad faith or gross negligence, *or to bring an action against my health plan.*
>
> (emphasis added).

The last sentence of this consent form speaks directly to the issue of whether Alexandra was precluded from bringing suit in court. In signing this waiver, Alexandra was informed that she would still be able to bring civil action against Oxford. This form further solidifies that under New York Insurance Laws, an insured is able to pursue her rights under ERISA in addition to the external appeal and bring an action in district court if she so choses. A reasonable person in Alexandra's position would understand that by pursuing an external appeal and signing this consent form, she reserved her right to sue her health plan.

### 3. Whether the external appeal process is preempted by ERISA

The final question is whether the New York state law allowing external review is preempted by ERISA. Under 29 U.S.C. § 1144(a), Congress provided that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." However, Congress also carved out certain state laws that are not preempted by ERISA, including any state law that "regulates insurance." 29 U.S.C. § 1144(b)(2)(A); *see also New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 651 (1995). In order to qualify as a law that "regulates insurance," and thus be saved from ERISA's preemption clause, the state law must 1) "be specifically directed toward entities engaged in insurance" and 2) "substantially affect the risk pooling arrangement between the insurer and the insured." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003).

Neither party contests the fact that the New York Insurance Laws "regulate insurance." New York Insurance Law § 4910(a) provides "[t]here is hereby established an insured's right to an external appeal of a final adverse determination by a health plan." The law explicitly refers to "the insured" and regulates how the insured can pursue an external appeal that the provider must honor. New York Insurance Law §§ 4910, 4914. This adds a term that insurers must make available for insureds in benefit plans and thus "substantially affects the risk pooling

36

arrangement between the insurer and the insured." Therefore, the New York law does "regulate insurance" and is not preempted by ERISA under § 1144(a).

We also recognize a second type of preemption, referred to as complete preemption. *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1344 (11th Cir. 2009). In the context of ERISA, Congress intended for the civil remedies under the ERISA enforcement scheme, 29 U.S.C. § 1132(a), to "be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987). Accordingly, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). If a state law provides such a replacement remedy, the state law is preempted under ERISA.

Alexandra raises the preemption issue contingently in the event we were to affirm the district court's interpretation of "binding" in the plan and hold that the external review is binding on the merits. Her theory, in that event, is that Oxford's plan, so understood, would include in the ERISA-governed plan a binding arbitration for the issue of medical necessity.

Because the external review process in the Oxford plan is not binding on the merits of the medical necessity issue, we perceive no preemptive effect from the

37

external review process. There is no concern that the insured's rights under ERISA are being intruded on. Thus, there is no complete preemption problem because the external review is not binding and thus does not replace or erase any ERISA remedy.

## IV.    CONCLUSION

For the foregoing reasons, we hold that the district court correctly determined that the external review is part of the administrative record and thus is included in the court's analysis. However, the court erred in determining that the external review was binding on the parties as to the medical necessity of Alexandra's treatment. The external review cannot preclude Alexandra from challenging the Oxford's denial of her benefits under ERISA in a district court.[10] We therefore affirm in part and reverse and remand in part to allow Alexandra to argue the medical necessity issue in district court.

**AFFIRM IN PART, REVERSE IN PART AND REMAND.**

---

[10] In the event that we reverse the district court on the preclusive effect of the medical necessity issue (as we do), Oxford asks this Court to greet and decide the merits of the medical necessity issue in this appeal. We decline Oxford's invitation. We also deem it prudent to give the district court, in the first instance, the opportunity to reconsider its view that de novo review applies here, where the external review is stripped of its estoppel effect on the issue of medical necessity.